UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LISA A. VERDONIK,<br>    1415 23rd Road South<br>    Arlington, Virginia 22202<br><br>        Plaintiff,<br><br>v.<br><br>SCOTT PRUITT,<br>    Administrator<br>    Environmental Protection Agency<br>    Ariel Rios Building<br>    1200 Pennsylvania Avenue, N.W.<br>    Washington, DC 20460<br><br>        Defendant. | Civil Action No. _____ |

## COMPLAINT
(Employment Discrimination)

### Introduction

1. Plaintiff Lisa A. Verdonik brings this civil action pursuant to the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 *et seq.*, as amended by Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), to remedy acts of unlawful employment discrimination and retaliation perpetrated against her by her now former employer, the United States Environmental Protection Agency ("EPA"). Specifically, she contends that her managers at the EPA continuously failed to accommodate her disabilities (cancer and anxiety), ultimately causing her constructive discharge, in violation of the Rehabilitation Act.

### Jurisdiction

2. This Court has jurisdiction over the subject matter of this civil action pursuant to the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 505, as amended by the Civil Rights Act of

1991, 42 U.S.C. § 1981a. Subject matter jurisdiction is also pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, thereby presenting a federal question.

### Venue

3. Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims occurred in this judicial district, the personnel records of defendant concerning plaintiff are here, and the defendant is located, has offices, and conducts business in this judicial district.

### Exhaustion of Administrative Remedies

4. All of the necessary administrative prerequisites for filing the above-referenced claims have been met, as the EPA issued a Final Agency Decision (FAD) on April 7, 2017, regarding plaintiff's administrative EEO complaint, which is within 30 days of the filing of the instant complaint with this Court.

### Parties

5. Plaintiff is a citizen of the United States and of the Commonwealth of Virginia. Until her involuntary constructive discharge from her employment in August 2013, plaintiff was employed by the EPA since July 2007, most recently as an Environmental Protection Specialist, GS-14 in EPA's Office of Chemical Safety and Pollution Prevention ("OCSPP").

6. Defendant Scott Pruitt is currently the Administrator of the Environmental Protection Agency and, as such, heads the EPA, which is an agency within the Executive Branch of the government of the United States that has employed more than 500 persons in each of the last 20 weeks. Mr. Pruitt is here being sued in his official capacity as the head of EPA only.

### Statement of Facts

7. Ms. Verdonik worked with the EPA as an Environmental Protection Specialist,

Series 028, GS-14 in the Office of Chemical Safety and Pollution Prevention in Washington, D.C., from July 2007 until her constructive discharge in August 2013. At all times relevant to this complaint, Ms. Verdonik reported directly to Angela Hofmann, Director of Regulatory Coordination. Her second-line supervisor was Louise Wise, Deputy Assistant Administrator, OCSPP and her third-line supervisor was Jim Jones, Assistant Administrator, OCSPP.

8. Ms. Verdonik has suffered from an anxiety disorder since 1995 and was diagnosed with breast cancer in September 2010. Ms. Verdonik's cancer treatment necessitated chemotherapy, which she received for one (1) year after diagnosis. She had major surgery, including deep inferior epigastric perforate reconstruction and mastectomy on March 4, 2011, as part of the treatment. Ms. Verdonik was on leave from September 2010 through May 2011.

10. During Ms. Verdonik's leave, Ms. Hofmann pressured her to return to work earlier than recommended by her doctor. When she did return to work in May 2011, Ms. Hofmann became much more strict with her time and attendance and even criticized her for taking too much time in the bathroom.

11. Ms. Verdonik's left arm was injured during her cancer-related surgery and in November 2011, she suffered a fracture in that arm. Ms. Verdonik's doctor advised her to keep her arm immobilized to avoid a compound fracture, which would require additional surgery. He also prescribed physical therapy. Due to these requirements, as well as her exacerbated anxiety, on November 23, 2011, Ms. Verdonik requested episodic flexiplace to work at home which she had been allowed to do previously, as recently as September 2011. Ms. Hofmann denied her request so Ms. Verdonik sought the intervention of her second level supervisor. After Ms. Verdonik sought assistance from Ms. Wise, her second-level supervisor, Ms. Hofmann treated her in a hostile manner.

12. Ms. Verdonik's request to work closer to home at the Agency's location in Potomac

Yard, Arlington was also denied. Due to the unique nature of the upper humerous fracture and the fact that this arm had experienced frozen shoulder due to the reconstructive surgery, physical therapy was recommended early to promote the healing process. Physical therapy for this type of injury is extremely painful and taxing. It would have been a simple matter to have transferred Ms Verdonik to work at Potomac Yard at a minimum, until telework from home was achieved, but roadblocks and excuses were put into place to prevent this accommodation.

13. Without an accommodation, Ms. Verdonik struggled to commute to work with her fractured arm. She had to walk to the shuttle on icy roads with a walking stick to catch the shuttle to get to EPA. If she did not take the shuttle, she had to take the metro, which was also dangerous for her. One two occasions, she tripped during her commute. Ms. Verdonik was afraid that if she fell she would compound the fracture of her arm.

14. On February 16, 2012, Ms. Verdonik submitted her request for flexiplace as a reasonable accommodation to Bill Haig, the EPA Reasonable Accommodation Coordinator. The Agency denied her request.

15. In or around February 2012, Ms. Verdonik also requested to be moved to another quieter workstation where she was not near her supervisor, who had begun to harass her. Due to anxiety and constant idle talk in the area, Ms. Verdonik had great difficulty concentrating at her workstation.

16. In March 2012, Ms. Verdonik went out on medical leave on the advice of her psychologist.

17. By August 2013, Ms. Verdonik realized she could not come back to work without an accommodation. Therefore, due to defendant's refusal to accommodate her disabilities and continued harassment, she retired.

## Statement of Claims

### Claim I – Failure to Reasonably Accommodate

18. As previously stated herein above, defendant, through subordinate EPA management unlawfully refused and failed to provide plaintiff with a reasonable accommodation for her handicapping conditions.

19. As a consequence of such unlawful failure to provide a reasonable accommodation for her handicapping condition, plaintiff has suffered and continues to suffer loss of pay, career damage, as well as personal and professional humiliation, and mental and emotional injury, as well as physical pain and suffering and financial losses.

### Claim II – Retaliation for Protected Civil Rights Activity

20. As previously stated herein above, defendant, through subordinate EPA management has retaliated against plaintiff for her complaining about the Agency's failure to accommodate.

21. As a consequence of such retaliation, plaintiff has suffered and continues to suffer loss of pay, career damage, as well as personal and professional humiliation, and mental and emotional injury, as well as physical pain and suffering and financial losses.

### Claim III – Constructive Discharge

22. As previously stated herein above, defendant, through subordinate EPA management constructively discharged plaintiff by refusing to provide her with a healthy, safe and non-hostile work environment.

23. As a consequence of such retaliation, plaintiff has suffered and continues to suffer loss of pay, career damage, as well as personal and professional humiliation, and mental and emotional injury, as well as physical pain and suffering and financial losses.

## **Prayer for Relief**

Plaintiff requests that the Court enter an order as follows:

(a) declaring that defendant unlawfully failed and refused to reasonably accommodate plaintiff's handicapping condition, and so violated the Rehabilitation Act, as amended;

(b) declaring that in causing plaintiff to retire by failing to accommodate her, defendant retaliated against her for her having engaged in protected civil rights activities in violation of Title VII of the Civil Rights Act, as amended;

(c) requiring defendant to reinstate plaintiff into a permanent GS-14 position at EPA's Potomac Yards location, with duties and responsibilities, and rights and privileges, commensurate with such a position, and with all emoluments and opportunities of that office, including full back pay with interest thereon, retroactive to August 2013;

(d) requiring defendant to provide plaintiff with additional back pay, with interest thereon, for the pay lost when she had to take leave without pay due to a failure to accommodate;

(e) requiring defendant to restore to plaintiff such sick and annual leave as she may have had to use during the period for 2010 until being constructively discharged in August 2013, as a result of EPA's refusal to permit her to work from home and/or the agency's retaliatory actions against her, and shall place all such re-credited annual leave into a special account that is not subject to "use or lose" provisions;

(f) requiring defendant to permit plaintiff to work from her home or at the Potomac Yard location, as a reasonable accommodation under the Rehabilitation Act, with the agency being required to provide her with the equipment and tools necessary for her to perform her duties and responsibilities successfully;

(g)     requiring defendant to credit plaintiff with such sick and annual leave as she would have earned since August 2013 had she not been constructively discharged at that time, and placing all such credited annual leave into a special account that is not subject to "use or loose" provisions;

(h)     requiring defendant to correct EPA's records, including plaintiff's Official Personnel File ("OPF"), so as to reflect the relief ordered by the Court;

(i)     requiring defendant to pay to plaintiff the sum of $300,000.00 in compensatory damages, plus interest thereon;

(j)     requiring defendant to refrain from any future acts of discrimination and/or retaliation against plaintiff;

(k)     requiring defendant to pay plaintiff the costs of bringing and maintaining this civil action and the administrative charges that preceded it, including reasonable attorneys' fees, with interest thereon; and,

(l)     requiring defendant to provide plaintiff with such other and further relief as the Court may find the interests of justice to require.

### Jury Demand

Plaintiff hereby requests a jury trial on all issues of fact, including the measure of damages.

Respectfully submitted,

/s/ Ellen K. Renaud

David H. Shapiro, D.C. Bar No. 961326
Ellen K. Renaud, D.C. Bar No. 479376
SWICK & SHAPIRO, P.C.
1101 15th Street, N.W., Suite 205
Washington, DC 20005
Tel. 202-842-0300
dhshapiro@swickandshapiro.com

Attorneys for Plaintiff